UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL BANK OF PAKISTAN,

                                    Plaintiff,

            - against -

GLOBAL CARGO LOGISTICS LIMITED,

                                    Defendant.

<u>COMPLAINT</u>

18 CV            (    )

Plaintiff National Bank of Pakistan ("<u>Plaintiff</u>" or the "<u>Bank</u>"), by and through its attorneys, Watson Farley & Williams LLP, as and for its Complaint against Defendant Global Cargo Logistics Limited ("<u>Defendant</u>" or "<u>GCL</u>"), alleges upon information and belief as follows:

<u>Jurisdiction</u>

1.      This court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy exceeds $75,000.

2.      This court has personal jurisdiction over the parties pursuant to the parties' consent to jurisdiction, as detailed herein, and because Defendant is a citizen of New York.

<u>Parties</u>

3.      Plaintiff National Bank of Pakistan is a national banking association operating under the laws of Pakistan.  Its main or head office as identified in its articles of association is located at NBP Building, I.I. Chundrigar Road, Karachi, Pakistan.

4.      Upon information and belief, Defendant GCL was at all relevant times a Delaware corporation with its principal place of business in New York, New York.

## FACTS

### Bank's Loans to Defendant GCL

5.      The Bank brings this action to recover against Defendant amounts loaned to it by the Bank.

6.      The Bank originally became a lender to Defendant in 1999.

7.      In 2008, the Bank extended credit facilities to GCL, guaranteed by the Defendant, amounting to $17,500,000, comprised of:

   a.   one medium term loan facility of $12,000,000 (the "Medium Term Loan"), repayable in 57 monthly installments to finance the acquisition of two vessels;

   b.   a one-year (subject to annual renewal) revolving short term loan facility of $5,000,000, (the "Revolving Facility"), to finance up to 85% of accounts receivable from the United Nations, to be repayable within 180 days; and

   c.   a one-year (subject to annual renewal) letter of credit facility of $500,000 (the "Letter of Credit").

8.      On November 11, 2009, Global Cargo Logistics (then known as Global Container Lines Limited) voluntarily filed for insolvency under Chapter 11 in the U.S. Bankruptcy Court for the Eastern District of New York (Case No. 8-09-78585).   The Chapter 11 Plan for Reorganization was confirmed on September 17, 2010.

9.      Pursuant to the restructuring, the two vessels originally financed by the medium term loan were sold, and GCL became the direct borrower under the credit facilities.

10.      Additionally, GCL restructured the credit facilities with the bank, pursuant to which the Bank and Defendant GCL entered into the Second Amended and Restated Security Agreement, dated September 23, 2010 (the "Second Amended Security Agreement").   Exhibit A.

80585159v2

11.     Pursuant to the Second Amended Security Agreement, GCL granted the Bank a security interest in GCL's right, title and interest in "Collateral," defined in the agreement to include, inter alia, Accounts and Customer Contracts (as those terms are defined therein) and "all other personal property of [GCL]…and all proceeds and products of each of the foregoing…". Ex. A at § 2.

12.     Upon information and belief, in or around 2016, GCL entered into a Participation Agreement with Star Trading & Marine Inc. ("Star Trading"), pursuant to which GCL held 45% of the shares in a Marshall Islands company which was to purchase a vessel – the M/V LISA I. Upon information and belief, GCL's purchase of those shares was financed by a loan from Star Trading to GCL; GCL repaid the loan using a GCL account at the Bank's New York branch, and Bank records appear to show that GCL repaid the loan in full by the end of 2017. As such, GCL's interest in the M/V LISA I became part of the security (the "Collateral") granted to the Bank.

13.     The Bank's security interest in the Collateral was perfected in UCC filings.  *See* Exhibit B.

14.     The Second Amended Security Agreement "secures the payment of all obligations of the Borrower… to the Bank now or hereafter existing under the Credit Agreement, the Notes and the other Loan Documents… (all such obligations being the 'Secured Obligations')".  Ex. A at § 3.

15.     Section 11 of the Second Amended Security Agreement provides:  "Grantor hereby irrevocably appoints the Bank the Grantor's [GCL's] attorney-in-fact, with full authority… upon the occurrence and during the continuance of an Event of Default, in the Bank's discretion, to take any action… the Bank may deem necessary or advisable to accomplish the purposes of this Agreement…" *Id.*

16.     Section 14(b) provides that "[t]he Grantor shall upon demand pay to the Bank the amount of any and all reasonable expenses including... the reasonable fees and expenses of its counsel... that the Bank may incur in connection with... (iii) the exercise or enforcement of any of the rights of the Bank hereunder or (iv) the failure by the Grantor to perform or observe any of the provisions hereof."

17.     "This Agreement shall create a continuing security interest in the Collateral and shall... (ii) be binding upon the Grantor, its successors and assigns..." *Id.* at § 17.

18.     The Second Amended Security Agreement is governed by New York law. *See* Ex. A at § 20(a).   Pursuant to that same section, the Grantor "irrevocably and unconditionally submits... to the nonexclusive jurisdiction of any New York State court or Federal court of the United States of American sitting in New York City" and "agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State Court or... in such Federal court." *Id.* at § 20(b).

Medium Term Loan

19.     Consistent with the Second Amended Security Agreement, GCL agreed to and was obligated to repay the then-outstanding amount of the Medium Term Loan, $8,959,522.28, in 28 monthly instalments. *See* Exhibit C ("Promissory Note (Term Loan)" dated September 23, 2010 (the "Medium Term Note").

20.     Specifically, GCL, as Borrower, was obligated to repay to the Bank this amount "in twenty-eight (28) equal consecutive monthly installments and to pay interest on such principal amount on the dates and at the rates specified in such [Amended and Restated Credit Agreement dated as of September 23, 2010.]" *Id.*

21.     The Medium Term Note is expressly governed by New York law. *See id.*

Revolving Note

22.     GCL executed a promissory note also dated September 23, 2010, with respect to the Revolving Facility (the "Revolving Note").   Exhibit D ("Promissory Note (Revolving Advances)").

23.     Pursuant to the Revolving Note, GCL as Borrower was obligated to pay to the Bank $7,000,000 "or, if less, the then aggregate unpaid principal amount of all Revolving Advances (as defined in the Credit Agreement), and to pay interest on such principal amount on the dates and at the rates specified in such Credit Agreement." *Id.*

24.     The Revolving Note is expressly governed by New York law. *See id.*

Subsequent Amendments

25.     Thereafter, the Revolving Facility (which was temporarily reduced to $5,000,000 for the first half of 2014) and Letter of Credit Facility of $500,000 were renewed annually until both terminated on December 31, 2017.

26.     In 2014, repayment of the Medium Term Loan was rescheduled to be not less than $100,000 per month plus mandatory quarterly cash sweep until repaid in full.

27.     GCL, as Borrower, and the Bank, as Lender, together with GCL Agencies, Ltd., as Guarantor, entered into the Second Amended and Restated Credit Agreement dated March 8, 2016.  Exhibit E (the "SACA").

28.     The SACA modifies the credit agreement dated September 23, 2010.

29.     Pursuant to the SACA, Defendant GCL, the Bank (and GCL Agencies, Ltd., as Guarantor) agreed to "(i) modify the rate of interest payable on the Term Loan... and (ii) to extend the availability of the revolving short term credit facility and the letter of credit facility...."

Ex. E at 1. The "Term Loan" refers to the "aggregate principal amount of term loans advanced under the [previous credit agreement] and outstanding (being $5,758,231.75…)". *Id.* at § 1.01.

30.     The SACA requires that Defendant GCL, as borrower, "repay to [the Bank] the Term Loan in quarterly installments on the Payment Dates, whereof each installment shall be equal to the lesser of (i) $100,000 and (ii) the outstanding principal balance of the Term Loan." *Id.* at §2.03.

31.     Article III addresses the "Amount and Terms of the Revolving Credit Facility", while Article IV of the SACA addresses the "Amount and Terms of the Letter of Credit Facility."

32.     SACA Article XI defines "Events of Default" to include Defendant GCL's failure "to pay any principal of the Term Loan, any Revolving Advance, any Note or any Drawing when due and payable" and GCL's failure "to pay any interest on any Term Loan, any Revolving Advance, any Note, any Unpaid Drawing or any fee payable to the [Bank] hereunder…" *Id.* at §11.01(a) and (b).

33.     Pursuant to the SACA, upon an Event of Default, the Bank is permitted to, *inter alia*, "… (ii) declare the principal of and accrued interest on the Term Loan, the Revolving Advances, the Notes, and all other amounts payable under this Agreement to be forthwith due and payable, whereupon the same shall become and be forthwith due and payable… (iii) terminate any Letter of Credit…" *Id.* at §11.01.

34.     Section 12.04 obligated Defendant GCL "to pay on demand all reasonable out-of-pocket costs and expenses of the Lender in connection with the enforcement of the Loan Documents… whether in action, suit, litigation… (including, without limitation, the reasonable fees and expenses of counsel for the Lender with respect thereto) and expenses in connection with the enforcement of rights under this Section 12.04(a)." *Id.* at §12.04(a).

35.     The SACA is governed by New York law. *See id.* at §12.08.

36.     On November 2, 2017, Defendant GCL, GCL Agencies, Ltd. and the Bank entered into an "Amendatory Agreement," amending certain provisions of the SACA. *See* Exhibit F.

37.     Specifically, the Amendatory Agreement amends SACA §10.02(c), regarding the sale or transfer of assets of Borrower, to provide that Defendant GCL shall cause the proceeds of any disposition of assets to be deposited into Defendant GCL's "DDA Account… (or any other account in the name of the Borrower) with the Lender." *Id.* at §3(a).

38.     The Amendatory Agreement is governed by New York law. *See id.* at §7.

**Defendant GCL Defaults on Obligations to Bank**

39.     In January 2018, the Bank met with representatives of GCL, Mr. Kazem Paksima and Mr. Hormoz Shayegan, about the outstanding facilities.

40.     At the meeting, GCL's representatives advised that they did not wish to continue GCL's business, and were contemplating liquidation.

41.     GCL also advised that the accounts receivable from the United Nations would be insufficient to repay the outstanding Revolving Facility.

42.     By letter dated January 29, 2018, GCL advised the Bank in writing that it was considering liquidation under Chapter 7 of the U.S. Bankruptcy Code.

43.     The Bank provided GCL with a notice of default by letter dated February 2, 2018 (the "Notice of Default"), expressly stating that the payment defaults described therein constitute Events of Default under the SACA (as amended by the Amendatory Agreement). *See* Exhibit G.

44.     As detailed in the Notice of Default, Defendant GCL had defaulted in the repayment of $2,369,500 plus $168,637.52 in overdue interest under the Revolving Facility, and an additional $123,615.95 in overdue interest under the Medium Term Loan. *See id.*

45. In the Notice of Default, the Bank also demanded repayment of $12,062,042.88 – the aggregate amount then due by Defendant GCL, "comprised of $4,930,461.84 in respect of the Term Loan and $6,968,137.51 in respect of the Revolving Advances… and $163,443.53 in respect of Standby letter of credit facility…". *See id.*

46. GCL did not then make, and has not since made, any further payments to the Bank.

**GCL Fails to Repay Bank, Ceases Operations**

47. By letter dated February 8, 2018, counsel for GCL advised the Bank that GCL ceased operations and advised the Bank take steps to protect its collateral.

48. Defendant GCL has failed to repay in full the Revolving Facility and the Medium Term Loan.

49. As of August 8, 2018, the amount outstanding under the Medium Term Loan is $4,806,845.89, and approximately $6,758,718.09 remains outstanding in revolving short term loans.

50. All of the debts owed by GCL to the Bank are secured by a lien on all of GCL's property, as perfected in UCC filings made by the Bank.

## AS AND FOR A FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

51. The Bank repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

52. Defendant GCL is obligated under the SACA (as amended by the Amendatory Agreement), the Medium Term Note and the Revolving Note (the "Loan Documents"), to repay to the Bank $11,565,563.98 together with interest thereon.

53. Specifically, with respect to the Medium Term Loan, GCL is indebted to the Bank in the amount of $4,806,845.89, plus interest of $285,446.43 through August 8, 2018.

80585159v2

54.     With respect to the Revolving Facility, GCL is indebted to the Bank in the amount of $6,758,718.09, plus interest of $384,510.89 through August 8, 2018.

55.     The Loan Documents are valid and enforceable contracts, governed by New York law.

56.     The Bank fully performed its obligations under the Loan Documents.

57.     $11,565,563.98, plus interest, became repayable upon August 8, 2018.

58.     Though demanded, no part of this sum has been paid.  As such, GCL is in breach of its obligations under the Loan Documents.

59.     The Bank has been damaged by GCL's failure to repay $11,565,563.98.

60.     The Bank is accordingly entitled to damages in the amount detailed herein.

### AS AND FOR A SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT

61.     The Bank repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

62.     The Bank conferred a benefit upon GCL in loaning and making available to GCL funds in the the amount of $11,565,563.98, at the Bank's expense.

63.     In failing to repay the loaned amounts to the Bank when and as demanded, GCL has improperly retained the benefit of $11,565,563.98 without adequately compensating the Bank for the same.

64.     It is against equity and good conscience to permit GCL to retain $11,565,563.98.

65.     As such, GCL has been unjustly enriched and the Bank has been damaged in the amount of $11,565,563.98 plus interest, costs and fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### CONVERSION

66.     The Bank repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

67.     The Bank provided, and GCL accepted, loans/credit in the amount of $11,565,563.98.

68.     The Bank demanded repayment of $11,565,563.98 plus interest.

69.     GCL refused to repay to the Bank any of the loaned amount.

70.     As such, GCL has converted the sum of $11,565,563.98 plus interest to its own use and to the exclusion of the Bank's rights.

## AS AND FOR A FOURTH CAUSE OF ACTION
### ACCOUNTS STATED

71.     The Bank repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

72.     The Bank issued the Notice of Default to Defendant GCL, identifying amounts owed to the Bank by GCL pursuant to the Loan Documents, which amounts GCL promised to pay.

73.     This Notice of Default constitutes an account stated.

74.     GCL received the Notice of Default, and made no objections to the amounts stated therein.

75.     Defendant GCL's silence constitute acceptance of the account stated.

76.     As of August 8, 2018, the total amount outstanding to the Bank is $11,565,563.98, plus interest.

77.     Defendant GCL is liable to the Bank for $11,565,563.98, plus interest pursuant to the doctrine of account stated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court issue and order and judgment in favor of Plaintiff and against Defendant as follows:

(A)     Money damages in the amount of $11,565,563.98 plus interest;

80585159v2

(B)     Attorneys' fees and costs of collection as permitted in the Second Amended Credit

Agreement, and

(C)     Such other, further and different relief as the Court may deem just and proper in

law and equity.

Dated:   New York, NY
         September 24, 2018

                          Respectfully submitted,

                          WATSON FARLEY & WILLIAMS LLP

                 By:
                          Neil A. Quartaro
                          Celinda J. Metro
                          Watson Farley & Williams LLP
                          250 West 55th Street
                          New York, New York 10019
                          (212) 922-2200
                          nquartaro@wfw.com
                          cmetro@wfw.com

80585159v2